IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MICHAEL LYNN ARCHER,           )
                               )
                Petitioner,    )
                               )
vs.                            )        Case No. CIV-05-536-M
                               )
RON WARD,                      )
                               )
                Respondent     )

REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. A response to the petition has been filed, to which the Petitioner has replied. Additionally, following Respondent's assertion of a procedural bar, the undersigned ordered supplemental briefing by the parties, which has been filed. Thus, the matter is at issue. Pursuant to an order entered by United States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, it is recommended that the petition be denied.

I. INTRODUCTION

A. Procedural Background

By this action, Petitioner challenges his convictions following a jury trial of two counts of lewd molestation and one count of indecent exposure, for which he was sentenced to twenty years imprisonment on each count, to be served consecutively. Case No. CF-1999-112, District Court of Grady County. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals affirmed on February 19, 2002. See Summary Opinion, Case No. F-2000-1426, Oklahoma Court of Criminal Appeals (Attached to the

petition, Ex. B1).  Petitioner filed a petition for a writ of certiorari with the United States Supreme Court, but the petition was denied.  Petition, p. 2, Ex. C.  Petitioner thereafter filed a motion for judicial review with the District Court of Grady County, which was also denied. Petition, p. 3, Ex. D1.  Petitioner then filed a petition for a writ of prohibition, which was dismissed as untimely.  Petition, p. 3, Ex. D2.  Petitioner apparently filed a renewed motion for judicial review in the District Court of Grady County, which was never considered. Petition, p. 3.

Petitioner then sought post-conviction relief in the District Court of Grady County. Petition, p. 4.   The application was denied on April 20, 2004.  Petition, p. 3, Ex. E1. Petitioner filed an appeal with the Oklahoma Court of Criminal Appeals, which dismissed his appeal as untimely on June 28, 2004.  Petition, p. 4, First Ex. E2.  Petitioner returned to the District Court of Grady County to seek leave to appeal out of time, which was denied on July 8, 2004.  Petition, p. 4, Ex. F1.  The Oklahoma Court of Criminal Appeals affirmed the denial of leave to appeal out of time on August 5, 2004.  Petition, p. 4, First Ex F2.  Petitioner filed a request with the Oklahoma Supreme Court, asking that it assume jurisdiction over his case, but the request was denied.  Petition, p. 4, Ex. G.

Petitioner raises twelve grounds for relief herein.  In Ground One, he alleges that the judge, jury and witnesses were improperly influenced by the religious atmosphere of the courtroom, in violation of the Establishment Clause.  Petition, p. 4-6.  In Ground Two, Petitioner alleges that the trial judge had a personal interest in the outcome of his case, and therefore should not have presided.  Petition, p. 6-7.  In Ground Three, Petitioner asserts that his sentences were excessive.  Petition, p. 7-18.  In Ground Four, Petitioner alleges that he was prejudiced by prosecutorial misconduct.  Petition, p. 18-26.  In Ground Five

Petitioner contends that counts three and four of the amended information had previously been dismissed, and therefore he should not have been tried on those counts.[1]  Petition, p. 26-27.   In Ground Six, Petitioner contends that he was incompetent at the time of the crimes and the trial.  Petition, p. 27-29.  In Ground Seven, Petitioner contends that he was denied due process due to errors on evidentiary issues that should have resulted in the granting of a mistrial.  Petition, p. 29-33.  In Ground Eight, Petitioner contends that he was denied the right to be present at all stages of his trial.  Petition, p. 34-35.  In Ground Nine, Petitioner contends that the State was not required to prove every element of the crimes beyond a reasonable doubt.  Petition, p. 35-36.   In Ground Ten, he asserts that he was denied the effective assistance of trial counsel.  Petition, p. 37-40.  In Ground Eleven, Petitioner alleges that he was denied the effective assistance of appellate counsel.  Petition, p. 40-42.  In his final ground, Petitioner claims that he is entitled to an evidentiary hearing to develop the record in order to correct a fundamental miscarriage of justice.  Petition, p. 42-43.

### B.  Factual Background

Petitioner was charged with two counts of lewd molestation and one count of indecent exposure as well as one count of indecent exhibition, all after former conviction of five felonies.  The charges stemmed from the molestation of A.K. while Petitioner was living in a home with A.K and her family, doing work on the house.   Tr. Vol. II, p. 321, Vol. III, p. 566-67.  A.K testified that during the Spring of 1998 she was touched by Petitioner, on top of her clothing, on her breasts, vagina, and "butt."  Tr. Vol. II, p. 240,

---

[1] Petitioner was acquitted by the jury on Count 4 of the Third Amended Information, which charged him with indecent exhibition to a minor.

3

247, 258, 285.  A.K. testified that the touching occurred while Petitioner was driving her to school and in the bedroom of her family home that was her brother's room, but where Petitioner stayed.  Tr. Vol. II, p. 240, 246-47.  Some of these instances took place in the presence of D.H., A.K.'s friend who visited her during spring break.  Tr. Vol. II, p. 241-42.  In one event the Petitioner attempted to get A.K to touch his penis.  Tr. Vol. II, p. 248.  She also testified that Petitioner told her that they would have sex that summer.  Tr. Vol. II, p. 245, 251.

Petitioner also exposed his penis to A.K in his bedroom and once to A.K. and D.H. during spring break of 1998, in the backyard of A.K.'s house.  Tr. Vol. II, p. 248, 249, 371-72 393-94.  D.H. testified that Petitioner also touched her breasts, "butt" and vagina, on top of her clothing, during her spring break visit to A.K's house.  Tr. Vol. II, p. 370-71.  After D.H. returned to Missouri from spring break she informed her mother about what Petitioner had done.  Tr. Vol. II, p. 376, 377, 406.

Petitioner admitted that the girls had accidentally found sexually explicit magazines and that when he found the girls looking at the magazines he told them not to look at such things.  Tr. Vol. III, p. 582-84.  He admitted that A.K. had accidentally seen some sexually explicit materials on a videotape that also contained Nascar races.  Tr. Vol. III, p. 588-89.  He explained that he played innocent games with them, including "titty twister" and "grabass," his generic term for horseplay.  Tr. Vol. III, p. 573-75.  He denied any sexually inappropriate conduct and asserted that the allegations were acts of retaliation by D.H.'s mother, whose advances he rebuffed.  Tr. Vol. III, p. 574-75, 595-98, 607-08.  Petitioner also admitted that he accidentally exposed himself to the girls on more

4

than one occasion, when they were hidden in his room after he returned from a shower, and once, perhaps, while he urinated in the backyard near where they were playing.  Tr. Vol. III, p. 590-93, 620.

## II. STANDARD GOVERNING PETITIONS FOR HABEAS CORPUS

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or  confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413; see also Wiggins v. Smith, 539 U.S. 510, 520 (2003).  It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable.  Williams, 529 U.S. at 410-11; Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir.), cert. denied, 125 S.Ct. 622 (2004).

### III.  THE DOCTRINE OF PROCEDURAL DEFAULT

Respondent contends that Petitioner's state court procedural default bars federal habeas review of grounds one, two, five, six, seven, eight, nine, ten and eleven.  On habeas review, federal courts will not review claims that have been defaulted in state courts on an independent and adequate state procedural ground unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively demonstrates a fundamental miscarriage of justice. Bousley v. United States, 523 U.S. 614, 622 (1998); Sawyer v. Whitley, 505 U.S. 333, 338-339 (1992); Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998). "'A state court's finding is considered independent if it is separate and distinct from federal law.'" Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995) (quoting Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994)). "'A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed.'" Id. (quoting Brecheen, 41 F.3d at 1353) (internal quotations omitted).

In dismissing Petitioner's appeal from the denial of his application for post-conviction relief, the Oklahoma Court of Criminal Appeals relied on Rule 5.2(C), which establishes a thirty-day limitations period for filing a petition in error.  Okla. Stat. tit. 22, Ch. 18, App. Rule 5.2(C)(2).  The Court concluded that because the judgment against Petitioner was filed in the District Court of Grady County on April 20, 2004, his June 4, 2004 petition in error was untimely.

The United States Court of Appeals for the Tenth Circuit has previously determined that Rule 5.2(C) is an independent and adequate state ground sufficient to

preclude habeas review.   <u>Duvall v. Reynolds</u>, 139 F.3d 768, 797 (10th Cir. 1998). Therefore, unless Petitioner can overcome the procedural bar, the independent and adequate state ground doctrine prevents review of claims raised in Petitioner's post-conviction relief petition.   <u>See</u> <u>Coleman</u>, 501 U.S. at 732 ("In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement.... The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.").

Petitioner can overcome the procedural bar only if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.   <u>Coleman</u>, 501 U.S. at 749-50.   "'Cause' must be 'something external to the petitioner, something that cannot be fairly attributed to him....'" <u>Steele v. Young</u>, 11 F.3d 1518, 1522 (10th Cir. 1993)(quoting <u>Coleman</u>, 501 U.S. at 753) To demonstrate prejudice Petitioner must show that if the constitutional claim had been raised in accordance with the state rules, there is a reasonable probability that the result of the trial would have been different.   A reasonable probability is a probability sufficient to undermine the confidence in the verdict.

### A.  CAUSE FOR THE DEFAULT

In response to Respondent's contention that certain of his claims have been procedurally defaulted, Petitioner contends that his appeal was untimely through no fault of his own.   As he did in his application for leave to appeal out of time, Petitioner

contends that he timely submitted a notice of appeal to the District Court of Grady County, but did not receive a file stamped copy.  He further contends that the only shortcoming in his appellate filings was the absence of an affidavit necessary to establish his in forma pauperis status.  In support of this argument Petitioner submits the affidavit from the prison finance supervisor to establish that the absence of a financial affidavit was through no fault of his own, because his financial information was not available from the correctional institution where he had been previously incarcerated.[2]  Petitioner utilized this same argument in his request for leave to file an appeal out of time, which was denied by the District Court of Grady County on July 8, 2004.  Response to Petition, Ex. F.  The Oklahoma Court of Criminal Appeals affirmed the denial on August 5, 2004.  Petition, First Ex. F2.

In this case, the Oklahoma courts have made a factual finding - in the context of Petitioner's motion for leave to appeal out of time - that bears on the issue of cause for the procedural default.  In order to be granted the right to an out-of-time appeal in Oklahoma, a petitioner must show that he was denied an appeal through no fault of his own.  Okla. Stat. tit. 22, Ch. 18 App. Rule 2.1(E).  In its order affirming the district court's denial of an appeal out of time, the Oklahoma Court of Criminal Appeals stated:

> After a review of the record on appeal, we find Petitioner has provided nothing to this Court to refute the District Court's findings, nor has he established he was denied a timely appeal through no fault of his own, the

---

[2] Petitioner originally argued that he timely filed his petition in error, but that it was not deemed filed until his affidavit in support of his request for in forma pauperis status was submitted.  Rule 1.11 of the Rules of the Oklahoma Court of Criminal Appeals provides in part that: "A pleading shall not be considered filed in this Court until such time as the filing fee is paid or an 'Affidavit in *Forma Pauperis*' is properly filed."  Okla. Stat. tit. 22, Ch. 18, App. Rule 1.11.

crucial issue to appeal out of time.  <u>Smith v. State</u>, 1980 OK CR 43, ¶3, 611 P.2d 276, 277.

<u>Archer v. State</u>, Case No. PC-2004-778 (Okla. Crim. App. Aug. 5, 2004) (Attached to the Petition as the First Exhibit F2).  The Oklahoma Court of Criminal Appeals' factual finding that Petitioner was not denied an appeal through no fault other than his own is presumed to be correct.  <u>See</u> 28 U.S.C. § 2254(e)(1).

When discussing "cause" in <u>Coleman</u>, the Supreme Court explained that it must be something "*external* to the petitioner, something that cannot fairly be attributed to him . . . ."  <u>Coleman</u>, 501 U.S. at 753.  A finding that Petitioner was denied an appeal due to his own fault is the equivalent of a finding that the default was attributable to him and therefore Petitioner cannot overcome the procedural bar with this argument.

Perhaps in recognition of this obstacle, Petitioner has provided yet another excuse for failing to timely file an appeal after denial of his application for post-conviction relief. As noted, Petitioner originally argued that he mailed his petition in error in a timely manner to the Oklahoma Court of Criminal Appeals.  When presented with the fact that the certificate of service attached to his petition indicates that it was mailed six days after the deadline expired, Petitioner now contends that because he was in segregated housing for his own protection that he did not have access to a law library or inmate law clerk.[3] This argument was not presented to the Oklahoma Court of Criminal Appeals.

---

[3] Petitioner presents this new justification by way of an amendment to his reply brief.  Petitioner did not, however, amend that portion of the reply brief where he asserts that his petition in error and his appellate brief were timely filed.  He merely substitutes his excuse regarding his in forma pauperis materials with the excuse that he could not access legal materials because he was in a private prison that does not have a law library and his placement in segregated housing.

Claims of "cause" to overcome application of the procedural bar must first be presented to the state courts before this Court may consider whether they are sufficient. Petitioner did not present this claim to the District Court of Grady County or to the Oklahoma Court of Criminal Appeals in his attempt to obtain leave to appeal out of time from the denial of his post-conviction application.   Accordingly, the undersigned concludes that Petitioner has procedurally defaulted on this cause argument and cannot rely upon his alleged lack of access to the law library or an inmate law clerk as a means to avoid the procedural bar.

> While there are very few record cases involving a double-layered application of the doctrine of procedural default, the Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default.  In Edwards v. Carpenter, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim.  The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim.  Id. at 451-53, 120 S.Ct. at 1593-94....  While the present case does not involve the attempted use of ineffective assistance of counsel as cause, we believe the rule set forth in Edwards applies to [Petitioner's] argument for cause....  We believe this an obvious and natural extension of Edwards and Murray[ v. Carrier, 477 U.S. 478, 496 (1986)], as all of the same reasons for applying the exhaustion and procedural default rules in Edwards and Murray apply equally here....  The very principles of comity and federalism that underlie the exhaustion doctrine are equally undermined regardless of whether the procedurally defaulted claim is asserted as cause for a procedural default or is denominated as an independent ground for habeas relief.  Murray, 477 U.S. at 489, 106 S.Ct. at 2646.

Henderson v. Campbell, 353 F.3d 880, 896-97 (11th Cir. 2003) (footnotes omitted), rehearing and rehearing en banc denied, 97 Fed. Appx. 908 (11th Cir. 2004), cert. denied, 125 S. Ct. 44 (2004).  In light of the foregoing, the undersigned finds that Petitioner cannot rely on the alleged lack of access to legal materials or an inmate law clerk as cause for his procedural default.  Accordingly, there is no need to consider the prejudice element.  Steele v. Young, 11 F.3d 1518, 1522 n. 7 (10th Cir. 1993).

### B.  FUNDAMENTAL MISCARRIAGE OF JUSTICE

Because Petitioner cannot show cause that will excuse his procedural default, in order to proceed with Grounds One, Two, Five, Six, Seven, Eight, Nine, Ten and Eleven, he must show that a fundamental miscarriage of justice will occur if the Court does not consider his claims.  Coleman, 501 U.S. at 750.  The fundamental miscarriage of justice exception is, however, "an extremely narrow exception, implicated only in 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Ballinger v. Kerby, 3 F.3d 1371, 1375 (10th Cir. 1993) (quoting Murray, 477 U.S. at 496). "To prevail, [Petitioner] must identify evidence that affirmatively demonstrates his innocence." Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999). Petitioner has wholly failed to identify evidence that affirmatively demonstrates his innocence.  Petitioner contends that a former Department of Human Services' employee, Jacquelyn Pargali, believed that A.K. had been coached by her mother and that her story might be fabricated.  However, Ms. Pargali, who was terminated and plead guilty to a felony, informed Petitioner's investigator during state appellate proceedings that she did not have any recall about his case or any information

to offer.  Petition, Ex. D.  Petitioner has not identified any other information to support his contention of innocence, and accordingly, the undersigned concludes Petitioner cannot rely on the fundamental miscarriage of justice exception to overcome the procedural bar.  Thus, the undersigned concludes that Petitioner has failed to overcome the procedural bar and recommends that habeas review of the claims raised in Grounds One, Two and Five through Eleven be barred.

### IV.  GROUNDS THREE AND FOUR

Petitioner's direct appeal raised two issues, excessive sentence and prosecutorial misconduct.  With regard to both of these claims, Petitioner concedes that not all of the issues raised herein were raised on direct appeal.  Those that were will be reviewed under the deferential § 2254 standard set forth above.  Those specific issues raised by Petitioner herein as part of these two claims which were not part of Petitioner's direct appeal should be barred from federal habeas corpus review by the procedural default doctrine set forth above.

### A.  Excessive Sentence

In Ground Three, Petitioner contends that the decision by the trial judge to run his three twenty-year sentences consecutively resulted in a constitutionally excessive sentence.  Following his conviction on three counts the jury returned a verdict indicating that Petitioner should be sentenced to twenty-years imprisonment on each count, the statutory minimum.   The trial judge exercised his discretion to run the sentences consecutively.

The Eighth Amendment prohibits sentences that are disproportionate to the crime committed.  Salem v. Helm, 463 U.S. 277, 284 (1983).  Petitioner does not assert that the twenty-year sentences are individually excessive.  His argument is based solely on the collective nature of the sentences, and the decision to run the sentences consecutively. Petitioner's argument must fail.

> The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes. See e.g. O'Neill v. Vermont, 144 U.S. 323, 331, 12 S.Ct. 693, 36 L.Ed. 450 (1892) ("If [the defendant] has subjected himself to a severe penalty, it is simply because he committed a great many such offences."); United States v. Schell, 692 F.2d 672, 675 (10th Cir. 1982) (twenty year sentence consecutive to current ninety-five year sentence not a violation of the Eighth Amendment).  Moreover, "[i]t is clear that the decision to run the sentences concurrently or consecutively is a matter within the trial court's discretion."  Money v. State, 700 P.2d 204, 207 (Okla.Crim.App. 1985).

Hawkins v. Hargett, 200 F.3d 1279, 1285 n. 5 (10th Cir. 1999).  In light of the nature of Petitioner's challenge to his sentences, he has not demonstrated that the state court's disposition of his claim was contrary to, or an unreasonable application of, Supreme Court precedent, or that it was based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to federal habeas corpus relief as to Ground Three and the undersigned recommends that the petition be denied in this regard.

Petitioner also raises issues under this ground regarding the nature and validity of his prior convictions, which were stipulated to by his counsel at trial.  Petitioner raised this issue on direct appeal, arguing in a pro se brief that the foreign judgments were unlawfully used for enhancement purposes.  Summary Opinion, p. 2.  The Oklahoma Court of Criminal Appeals rejected this contention, concluding that Petitioner had not established that the convictions were invalid.  Summary Opinion, p. 2.

13

As noted above Petitioner stipulated to his prior convictions and never argued at trial that the foreign convictions could not be used to enhance his sentences.  As noted by the Oklahoma Court of Criminal Appeals, Petitioner has not established that these convictions were invalid.  Summary Opinion, p. 2.  Additionally, Petitioner has not provided this Court with any basis for concluding that the convictions were improperly used in his Oklahoma case.  Accordingly, Petitioner has failed to establish that the decision of the Oklahoma Court of Criminal Appeals was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.  Habeas corpus relief should be denied on this basis.

**B.  Prosecutorial Misconduct**

In Ground Four, Petitioner contends that prosecutorial misconduct deprived him of due process.  Petitioner raised certain aspects of this claim on direct appeal, and those issues not raised on direct appeal are barred as set forth above.  Although the Oklahoma Court of Criminal Appeals did not address Petitioner's specific individual claims of prosecutorial misconduct, it found that neither reversal nor modification was required on any of Petitioner's allegations of prosecutorial misconduct, either individually or collectively.  Summary Opinion, p. 1-2.

The Tenth Circuit has held that unless the comments of a prosecutor violate a specific constitutional right, the test for determining whether or not prosecutorial comments violate due process is that set forth by the Supreme Court in <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974). <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1355 (10th Cir. 1994); <u>Mahorney v. Wallman</u>, 917 F.2d 469, 472 (10th Cir. 1990). In <u>Donnelly</u>, the

Supreme Court held that prosecutorial comments violate due process only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair.  DeChristoforo, 416 U.S. at 642-48.  Under this test, it is not enough for Petitioner to show that the remarks were undesirable or even universally condemned.  Id. at 642-43.  Rather, the relevant question is whether the remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 181 (1986).  In assessing a claim of prosecutorial misconduct, the allegations are considered in the context of the entire trial:

> To view the prosecutor's statements in context, [the Court looks] first at the strength of the evidence against the defendant and decide[s] whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." ... We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements.... When a prosecutor responds to an attack made by defense counsel, we evaluate that response in light of the defense argument.... Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994)(internal quotations and citations omitted).  Because this issue was considered by the Oklahoma Court of Criminal Appeals on direct appeal, the deferential 28 U.S.C. § 2254 standard of review is applicable.  With this standard in mind, each of Petitioner's claims of prosecutorial misconduct shall be considered in turn.

**1. Sympathy for the Victims**

Petitioner's first allegation of prosecutorial misconduct is that the prosecutor attempted to elicit sympathy for the victims in her closing argument.  The prosecutor apologized to the jurors for having to view the videotape that Petitioner allegedly showed

to the victims, noting that it was disgusting, and commenting on how embarrassing it must have been for the nine-year-old victims to view the tape.  Tr. Vol. III, p. 668-69.  Petitioner's trial counsel objected, and the objections were overruled.  Tr. Vol. III, p. 668-69.  Without specific consideration of any of Petitioner's claims of prosecutorial misconduct, the Oklahoma Court of Criminal Appeals ruled that there was no prosecutorial misconduct that deprived Petitioner of a fair trial.  Summary Opinion, p. 2.  To prevail on his prosecutorial misconduct claim Petitioner must establish that the Oklahoma Court of Criminal Appeals' decision was contrary to or an unreasonable application of clearly established federal law.

While the Court does not condone prosecutorial remarks encouraging the jury to allow sympathy to influence its decision, see Duvall v. Reynolds, 139 F.3d 768, 795 (10th Cir. 1998), the undersigned finds that the isolated statement about which Petitioner complains, did not violate his constitutional rights.  Moreover, after reviewing the record, the undersigned  cannot conclude the comments affected the outcome of the trial.  First, Petitioner was acquitted of the charge of exhibiting obscene materials to minors, which was premised at least in part on the videotape about which the prosecutor was commenting.[4]  Prior to any testimony being taken, the jurors were instructed that the statements of the attorneys are not evidence and specifically that closing arguments were not evidence, but were solely for purposes of persuasion.   Tr. Vol II, p. 215, 217.  Furthermore, the trial court instructed the jury to consider only the evidence and

---

[4] According to the jury instructions the elements of the crime of exhibition of obscene material require proof that the defendant wilfully showed or exhibited to a minor child any obscene or indecent motion picture for the purpose of sexual stimulation.  Instruction No. 22.

testimony received at trial and to not allow sympathy to enter into its deliberations. Instruction Nos. 8, 11, and 12.  These instructions, which the jury presumably followed, helped to mitigate any effect on the jury of any possible improper prosecutorial statement in this regard. See Fero, 39 F.3d at 1474.  Moore v. Gibson, 195 F.3d 1152, 1172 -73 (10th Cir. 1999).

**2.  The Prosecutor Argued that Petitioner was Lying**

Petitioner next argues that the prosecutor improperly argued that he was lying to the jury in his testimony.  The prosecutor argued that certain of Petitioner's testimony was "totally unbelievable."  Tr. Vol. III, p. 724.  Petitioner made a statement that the two victims told him secrets that their parents would be unable to imagine.  Tr. Vol. III, p. 641. When pressed for specifics Petitioner testified that the secrets included the fact that the girls had made a sandwich and hidden it in A.K.'s room.  Tr. Vol. III, p. 641-42.  The prosecutor called this story totally unbelievable.  Tr. Vol. III, p. 724.  Additionally, the prosecutor argued that the jury should not believe Petitioner's explanation that his exposure of his penis to the girls on two or three occasions was accidental and unintentional.  Tr. Vol. III, .p. 672-73.  The prosecutor further argued that Petitioner's explanation that the allegedly obscene videotape had been recorded from cable television was not believable.  Tr. Vol. III, p. 675.

We have not ... established that referring to testimony as a lie constitutes per se prosecutorial misconduct. See [United States v. Nichols, 21 F.3d 1016, 1019 (10th Cir.1994)]; United States v. Robinson, 978 F.2d 1554, 1567 (10th Cir.1992) (noting that although "'a prosecutor would be well advised to avoid directly accusing defendant of lying[,] ... we are confident that the statements in this case would have been perceived only as commentary on the implausibility of the defendant's story'" (quoting United States v. Garcia, 818 F.2d 136, 143-44 (1st Cir.1987))). Like the

17

> prosecutor's comments in <u>Robinson</u>, we find the argument here was merely a commentary on the veracity of defendant's story .... More importantly, even if the comments were improper, they were not so egregious as to constitute a miscarriage of justice. As noted above, the prosecutor made the comments in a case that required the jury to believe one witness and disbelieve the other....

<u>United States v. Hernandez-Muniz</u>, 170 F.3d 1007, 1012 (10th Cir. 1999). The prosecutor's comments on the implausibility of Petitioner's testimony did not deprive him of a fair trial. Petitioner was acquitted on the charge of exhibiting obscene materials, and therefore it is clear that the jury was able to overcome any impact of the prosecutor's statement that the contents of the videotape could not have been from cable television as alleged by Petitioner. Additionally, in this case where Petitioner offered innocent explanations for exposure of his penis and touching the victims, the relative credibility of the Petitioner and the victims and the plausibility of his innocent explanations was at issue. Finally, as noted above, the jury was instructed that closing arguments are not evidence, and that they were the deciders of fact, and their decision was to be made based on the evidence presented in Court and the stipulations by the attorneys. Tr. Vol. II, p. 215, 217, Instruction Nos. 8, 11. Again, the jury is presumed to have followed these instructions and to have evaluated the case on the basis of the evidence, not the arguments. <u>See</u> <u>Fero</u>, 39 F.3d at 1474.

Petitioner also contends the prosecutor argued that he was lying by noting Petitioner's allegation, unsupported by any other evidence, that he had approached the Department of Human Services (DHS) about the allegations against him and that he had spoken with a black woman employed there in an effort to clear his name. Tr. Vol. III, p. 716. Petitioner contends that his allegation was supported by other evidence in the

case, namely the testimony of Detective Perske that someone had dropped the ball and that is why five months passed before an investigation was formally initiated. Tr. Vol. III, 548-49. Although there is evidence that someone made contact with DHS prior to July 1998, there is no evidence that it was Petitioner. Furthermore, the mere fact that Petitioner attempted to clear his name is not inconsistent with guilt. Petitioner has failed to demonstrate that the Oklahoma Court of Criminal Appeals' determination that he was not deprived of a fair trial by the comments was contrary to or an unreasonable application of clearly established federal law.

Petitioner also complains about the prosecutor's commentary regarding Petitioner's testimony that he came to Oklahoma in 1998 to die. The prosecutor argued that a person expecting to die does not get married. Tr. Vol. III, p. 723. The prosecutor's argument was in response to defense counsel's argument that his client was innocent and that a guilty man does not move forward with his life by getting married and continuing to live in the community where he has been accused of molesting a child. Tr. Vol. III, p. 691. Additionally, part of Petitioner's innocent explanation for exposing his penis to A.K. and D.H. was that his lung ailment made it difficult for him to walk around from the backyard to the inside of the house in order to urinate. Tr. Vol. III, p. 590-91, 622. The credbility of the testimony by Petitioner regarding the nature of his illness and his innocent explanation for exposing his penis was an issue that could be fairly commented on by the prosecutor. Tr. Vol. III, p. 573-74, 590-91, 622, 623. The prosecutor's argument was a response to Petitioner's testimony and defense counsel's closing argument, and in light of the jury instructions regarding what to consider as evidence and how to assess

credibility, the decision of the Oklahoma Court of Criminal Appeals that Petitioner's due process rights were not violated was not contrary to or an unreasonable application of clearly established federal law.

Petitioner also complains about the prosecutor's comments during closing argument on his training as a mental hygiene counselor. Tr. Vol. III, p. 725. The prosecutor argued that Petitioner was unaware of what mental hygiene is, noted that Petitioner's training was received while he was incarcerated and expressed doubt that Petitioner was a legitimate counselor. Tr. Vol. III, p. 725. As noted throughout, the jury in this case was called upon to weigh the credibility of Petitioner versus that of A.K and D.H. Petitioner attempted to support his credibility and to explain his version of the events in part by relying on his training as a counselor. Tr. Vol. III, p. 651-53. The prosecutor read from Petitioner's statement to police that when A.K. attempted to hit him below the belt that he did not want her to feel like she was a bad person, only that she was misguided, based on his experience as a counselor. Tr. Vol. III, p. 651-53. The prosecutor used her closing argument to cast doubt on the Petitioner's version of the events and his training. The undersigned concludes that the Petitioner was not deprived of a fair trial by virtue of the prosecutor's commentary on the evidence. For the reasons set forth above, the undersigned concludes that Petitioner has failed to establish that the Oklahoma Court of Criminal Appeals' decision that he was not deprived of a fair trial was contrary to or an unreasonable application of clearly established federal law. Accordingly, the undersigned recommends that habeas corpus relief be denied on this basis.

### 3. Vouching

Petitioner also argues that the prosecutor violated his due process rights by vouching for the credibility of the victims.  The Petitioner does not specify how in closing argument the prosecutor bolstered the testimony of the victim, A.K.  The prosecutor did highlight the testimony of A.K.'s counselor that A.K. had been consistent in her story since the beginning of her therapy sessions.  Tr. Vol. III, p. 720.

> Generally, prosecutors should not personally vouch for the credibility of state witnesses or place their own integrity and credibility in issue. See Hopkinson v. Shillinger, 866 F.2d 1185, 1209 (10th Cir.), reh'g on other grounds, 888 F.2d 1286 (10th Cir.1989). Here, however, the statements were made in response to comments of defense counsel. See Darden, 477 U.S. at 182, 106 S.Ct. 2464; see also Hopkinson, 866 F.2d at 1210 (recognizing that improper statement made in response to defense counsel's arguments does not make statement proper, but it may affect context in which jury views improper statement). Also, the statements were made in isolation. See Donnelly, 416 U.S. at 647, 94 S.Ct. 1868 (determining court should not lightly infer prosecutor intended isolated, ambiguous remark to have most damaging meaning or that jury will draw that meaning from other less damaging interpretations); see also United States v. Ludwig, 508 F.2d 140, 143 (10th Cir.1974) (reversing conviction in direct criminal appeal where prosecutor vouched for integrity of state police and vouching was not isolated incident).

Moore v. Gibson, 195 F.3d 1152, 1173 (10th Cir. 1999).  The comments about which Petitioner appears to complain were in response to the closing argument presented on his behalf that focused on the alleged inconsistencies in the prosecution's case, especially on the testimony of the victim, A.K.  Tr. Vol. III, p. 682-83, 684-85, 696, 709-710.  The prosecutor, however, did not cross the line from advocate to witness in making her comment that A.K.'s testimony was consistent with the version of events that she told her counselor.  Again, in light of the cautionary instructions given to the jury on evaluating the evidence and the credibility of witnesses, and that statements and arguments of

counsel are not evidence, Petitioner has failed to establish that he was deprived of a fair trial.  Accordingly, the undersigned recommends that habeas corpus relief be denied because Petitioner has not shown that the decision of the Oklahoma Court of Criminal Appeals  was contrary to or an unreasonable application of clearly established federal law.

### 4.  The Prosecutor Misstated the Evidence

Petitioner next argues that the prosecutor argued facts not in evidence. Specifically he complains that the prosecutor made reference to the fact that Petitioner had played "titty twister" with patients in a Bethany nursing home where he worked with Alzheimer's patients, when his actual testimony was that he had played "grabass."  Tr. Vol. III, p. 575, 634-35.  Petitioner testified that "grabassing" was his catchall phrase for playing.  Tr. Vol. III, p.575.  Defense counsel did not object to the statement, which was clearly a minor misstatement of fact, and one of small magnitude in the context of the entire trial.  Again, the jury was instructed on what was evidence and how to consider the evidence in arriving at their determination of the facts.  This isolated misstatement did not operate to deprive Petitioner of a fair trial, especially when considered in conjunction with the preliminary instruction to the jury that statements and closing arguments are not evidence.  Tr. Vol. II, p. 215, 217.  The undersigned therefore recommends that habeas corpus relief be denied on this basis as Petitioner has failed to establish that the Oklahoma Court of Criminal Appeals' decision in this regard was contrary to or an unreasonable application of clearly established federal law.

### 5.  Personal Expressions of Petitioner's Guilt

Petitioner next argues without elaboration that the prosecutor offered the jury her personal opinion about Petitioner's guilt.  Presumably Petitioner is complaining about the rhetorical question posed by the prosecutor in closing argument: "What does a child molester look like?"  She then indicated toward Petitioner.  Tr. Vol. III, p. 727-28.  The prosecutor did not state that she personally believed Petitioner was guilty. She argued that the State had proven the elements of the charges against Petitioner and that he was indeed guilty, without any reference to her personal opinion and without any attempt to place the weight and authority of her government position behind her opinion.  Even if it was an improper comment by the prosecutor, in light of the jury instructions and because it was an isolated comment in a trial that spanned for four days, the undersigned concludes that Petitioner was not deprived of a fair trial as a result of the comment and therefore recommends that habeas corpus relief be denied.

### 6.  Cumulative Effect of Alleged Prosecutorial Misconduct

Finally, Petitioner argues that cumulative prosecutorial misconduct rendered his trial fundamentally unfair.  "'A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'"  Cargle v. Mullin, 317 F.3d 1196, 1206-07(10th Cir. 2003) (quoting United States v. Toles, 297 F.3d 959, 972 (10th Cir.2002)(quotation omitted)).  Even if the prosecutor's comments viewed in isolation do not warrant relief, Petitioner maintains that their combined impact does.

The undersigned has considered, in context, each of the alleged instances of prosecutorial misconduct identified by Petitioner and recommends that habeas corpus relief be denied on this basis because the Oklahoma Court of Criminal Appeals' ultimate determination that Petitioner was not entitled to reversal under a cumulative error analysis is not contrary to nor an unreasonable application of Supreme Court law. The jury was called upon to consider the victims' testimony versus Petitioner's attempt to offer innocent explanations for the events and his complaints that he was being framed for a crime he did not commit. Either individually or cumulatively, the prosecutor's statements did not deprive Petitioner of his due process rights, especially in light of the numerous instructions to the jury regarding their role, what is evidence, and what they could consider in assessing Petitioner's guilt. Accordingly, the undersigned recommends that habeas corpus relief be denied on this claim as well.

### 7. The Prosecutor Withheld Exculpatory Evidence

Petitioner raises a new claim of prosecutorial misconduct based on the alleged failure to produce exculpatory evidence, presumably pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Petitioner did not raise this issue on direct appeal, and the Oklahoma Court of Criminal Appeals declined to consider Petitioner's untimely post-conviction appeal as set forth above. Accordingly, this issue is subject to the procedural bar as set forth above. As noted supra, Petitioner has failed to allege sufficient facts to overcome that bar. Accordingly, the undersigned recommends that the petition for habeas corpus relief be denied on this claim.

## C. Motions

Petitioner filed an application for leave to conduct discovery and requesting an evidentiary hearing. Petitioner asserts that discovery is necessary to support his claim of actual innocence to overcome application of the procedural bar. As set forth above, Petitioner's claim of actual innocence rests on the testimony of a witness who admitted during the course of Petitioner's direct appeal that she had no information about his case and did not have any helpful testimony. According to Petitioner, Ms. Jacquelyn Pargali, a former Department of Human Services worker who was fired and prosecuted for a felony did not believe A.K.'s allegations of molestation and believed she was being coached by her mother. Ms. Pargali informed Petitioner's appellate investigator that she had no knowledge regarding his case and could not assist in any manner. Petition, Ex. D. Accordingly, this lone witness who apparently has nothing to offer on Petitioner's behalf would be futile. Furthermore, without testimony from Ms. Pargali, which does not itself establish actual factual innocence, Petitioner cannot avoid the procedural bar of his prosecutorial misconduct claim based on the failure to produce exculpatory evidence. Accordingly, the undersigned therefore recommends that discovery be denied.

Petitioner's request for an evidentiary hearing is governed by the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2254(e)(2) states:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> > (A) the claim relies on –
> > > (I) a new rule of constitutional law, made retroactive to cases on collateral review by the

> Supreme Court, that was previously
> unavailable; or
> (ii) a factual predicate that could not have been
> previously discovered through the exercise of
> due diligence; and
>
> (B) the facts underlying the claim would be sufficient to
> establish by clear and convincing evidence that but for
> constitutional error, no reasonable factfinder would have
> found the applicant guilty of the underlying offense.

The first step in determining whether an evidentiary hearing is warranted is to determine whether Petitioner failed "to develop the factual basis" of his claims in state court; that is whether there was a "lack of diligence, or some greater fault, attributable to" Petitioner or his counsel.  Williams v. Taylor, 529 U.S. 420, 432 (2000); 28 U.S.C. § 2254(e)(2).  According to Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998), if "a habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition, but a state court has prevented him from doing so, § 2254(e)(2) does not apply." Id. at 1253.  In other words, if Petitioner diligently sought an evidentiary hearing in state court and his request was denied, the Petitioner cannot be deemed to have "failed to develop the factual basis" of the claims.  Id.

In his initial application for post-conviction relief Petitioner requested an evidentiary hearing from the District Court of Grady County.  The Court denied his request.  Petition, Ex. E1.  Petitioner's appeal from that order was dismissed by the Oklahoma Court of Criminal Appeals as untimely.  Petitioner's failure to timely appeal denial of his application for post-conviction relief mandates a conclusion that he failed to develop the factual basis of his claim in state court, thereby requiring consideration of 28 U.S.C. § 2254(e)(2)(A).

26

Petitioner cannot rely on either exception set forth in 28 U.S.C. § 2254(e)(2), because he does not assert that a new rule of constitutional law applies or that the factual predicate for his claims was unknown at the time of his trial and direct appeal.  Finally, the issue on which Petitioner seeks an evidentiary hearing, the issue of Ms. Pargali,  is procedurally barred.   Accordingly,  the  undersigned  therefore  recommends  that Petitioner's motion for evidentiary hearing be denied.

Finally, Petitioner filed a motion to receive filings, requesting that the Court supply him with copies of jury instructions and a transcript of proceedings, which the undersigned ordered the Respondent to file.  Petitioner contends that copies of the filings are necessary to support any objection to the Report and Recommendation that he might wish to file.  The undersigned has sufficiently described the pertinent jury instructions and concludes that Petitioner does not need copies of those instructions to respond to this Report and Recommendation.  Additionally, the transcript received in response to the Court's September 8, 2005 order is not cited anywhere herein nor relied upon in any manner by the undersigned in assessing Petitioner's claims.  According, the undersigned recommends that Petitioner's motion to receive filings be denied.  Finally, Petitioner has filed a motion requesting that counsel be appointed to represent him.  In light of the recommended disposition, the undersigned recommends that this motion be denied as well.

RECOMMENDATION

For these reasons, the undersigned recommends that the petition for writ of habeas corpus be denied, that Petitioner's motion for discovery and an evidentiary hearing be

denied, and that his motion to receive filings be denied. [Doc. Nos. 26, 32].  It is further recommended that Petitioner's motion for appointment of counsel [Doc. No. 33] be denied.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by December 12, 2005, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 22nd day of November, 2005.**

_____

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE